Good morning, Your Honors. May it please the Court, Carolyn Wiggin from the Federal Defender's Office for Mr. Teausant, and I will try to reserve two minutes for rebuttal. I want to start by thanking the Court for accepting my brief yesterday, and I'd like to jump into the issues covered in the supplemental briefs. Your Honors, we believe that under this Court's recent en banc decision in Simon, it's clear that the district court in this case should have done the guidelines calculations under 2X1.1 and not 2M5.3. Assume you're right. Okay. The government says, and my calculations end up about the same way, that that probably would have made the guideline calculation 34 rather than 37. The offense, the final offense level? Yeah. Yes. The government, I believe, concedes he would get the 3. Okay. So assume you got the 3-point downward departure. The judge said something like this. Boy, these numbers are so high, I'm going to use the maximum in effect as the guideline, and then gave your client 12 years rather than the maximum of 15. Why would it make any difference to this district judge if the guideline calculation were 34 over twice the maximum as opposed to 37 a little more than over twice the maximum? Well, the ---- So why wasn't the error harmed? Why isn't any error harmed? Right. Well, what the district, what the probation office and district judge decided was that the guideline range was 360 months to life. And when the parties got to the point of the sentencing hearing when they were arguing for downward bearing ---- Right. And the judge said, what difference does it make? These numbers are so high that I'm going to start with the notion, his exact quote, but you know what he said. I'm going to start with the notion that the maximum is the guideline. 15-year statutory maximum. Right. Which remains the same even after assignment, of course. So the question is, why wouldn't the judge, when confronted with, assuming 2X1 applies and I think it does, and the judge calculates the new guideline and it's 34 rather than 37, why wouldn't he go through exactly the same, exactly the same sort of analysis that he did last time? This is so high, I'm going to use the max as the guideline and I'm going to depart downward from it for 3 years. Well, Your Honor, when the defense was arguing, listen, treating him as a criminal history category 6 is unreasonable. He has no criminal history. He was very ineffectual. The district judge specifically states, well, I don't agree with that. He went from no crimes at all to a crime that carries life. So there were a couple of stray remarks that you focus on in your briefing where he acknowledges that under Hernandez-Franco, it would come out to 360 months to life. But then, rather than give the statutory maximum of 15 years, he varies, he departs downward from that. The government, I guess, suggested proposed 9 years. He said, no, that's too low. But the statutory maximum was too high and he did something in the middle. And it's hard to see why the fact that both guidelines calculations under either 2M5.3 or the 2X1.1, which were way, both of which were way over the statutory max, it's hard to see how that made any difference. I believe that the district judge's belief that authentic guidelines called for 360 months to life was influencing him. It's very unusual. But that's not what the judge said. Here's what the trial court judge said. As a matter of law, the 15-year maximum sentence becomes the guideline range. And the court so finds, with respect to the guideline calculation, this is the starting point for the sentencing hearing. So that would have occurred, that finding as a matter of law, 15 years is the X1.1 argument or otherwise. Yes, Your Honor, but I do think both parties, it's unusual for the government to be asking for a downward variance below what the sentence ends up being. And I do think that the district court would have wanted to know. I'm not looking at a life sentence that I'm varying from here. I mean, although he did acknowledge 15 years is the stat max becomes the guidelines. I don't deny that. But still, when thinking about the variance, it was integral to his analysis that this young man went from no crimes to a 360 to life crime. I think the district judge would have wanted to know. Under our analysis, it becomes a 210 to 260. Under even the government's analysis, it becomes a 260 to 320 something. That's quite different when you're asking to go to 9 years than a life sentence. And I think that was important to why he thought, I am going to treat this as a criminal history Category 6. Your argument is just that notion of life anchored the judge such that his application of 3553A became skewed. Yes. And the judge did mention, to be fair, once or twice, that I do have to consider the guideline. But then he went and said something like, I consider it so high, so I'm just going to start with the max. Let me ask you a different question. If the judge had given your client the maximum and said, the guideline is so much higher than the maximum, I'm going to give you the maximum, and you were back here today under identical circumstances, would the error be harmless? I still think if the judge... Because, you know, if the judge just said, I'm not referring to life, I'm just going to pay attention to the guideline, and it's so much more than the maximum, I'm going to give you the maximum, would you then have a harmless error argument? We would still be arguing the sentence is substantively unreasonable. Oh, I know you've got a separate substantive unreasonable. Let's assume for a second that 12 years is substantively reasonable. And so we're only trying to figure out whether the use of 2MB3 rather than 2X1.1 was a harmless error. If the judge had erroneously used 2M5.3 rather than 2X1.1, we would still be arguing it's a guidelines error that deserves... Even if the judge said, because the guideline is more than twice the maximum, I'm going to give you the maximum. And under 2X1, it would have been more than twice the maximum also. Well, under 2X1.1, I think we come out at 210 to 260. Yeah, but you're giving yourself a credit that the judge wouldn't give you under 2MB3, which is remorse in effect, acceptance of responsibility. Right. I think he would have gotten — I don't think there was any question on anyone's mind that he deserved an acceptance of responsibility for entering an open plea to the one thing he was charged with. So I don't think that would have been true. So the credits you give yourself and your client is that and what other credit? I give him the three-level reduction for an attempt that was not close to completion. Right. And I give him a two-level reduction for not getting the 2M5.3B two-level bump for the idea that he... For terrorism. Well, it's not terrorism. It's specifically intended to facilitate a violent act. Yeah. And so that's an optimistic analysis, isn't it, given what the judge did on — what he said on sentencing? He decided to use 2M5.3 before he got to — and the commentary in 2X1.1 about what offense characteristics you add on when you're in 2X1.1 land say it has to have actually occurred or been specifically intended. I'm taking you off track a little bit. Under your most optimistic calculation under 2X1.1, what's the range? The range becomes — the range becomes 210 to 262 because I think we get down to offense level 32 and criminal history 6, assuming the judge still uses 3A1.4. So we get to 210 to 262. So the bottom of that 210 is not twice the 15 years. But it's above the max. It is above the max. Okay. Do you want to save the rest of your time? I will. Thank you. Good morning, Your Honors. I'm Jason Hiff for the United States. The Court, all three judges have accurately pointed out, this judge's sentence was thoughtful, careful, rational, and grounded in the Section 3553 factors. As Judge McShane mentioned, and there's another quote that I think points this out, the judge said, the sentencing guideline itself is again a factor, but as the Assistant Federal Defender, Mr. Galloway, pointed out, it really does not come into play as much in this case in terms of a 30-year to life sentence is not available. Only a 15-year sentence is available to the Court. In reading the sentencing transcript and the Court's decision to vary to 12 years, the Court was very impressed by the need to protect the public, the adequate deterrence that needed to be imposed by this sentence. And I think, as this Court has pointed out in the opening argument, the Court's decision and its sentence would not change if Simon. We're guessing, aren't we, though? I mean, there's certainly – that would be my best guess, and my best guess, if we sent it back, the judge would impose the 12 years again. But we – it is procedural error to use the wrong guideline calculation. Let's assume I don't – and I don't buy your argument that 2MV3 applies. And the judge did say once or twice, I haven't – and I've looked at the guidelines and they've informed my decision, but really, I'm working off the max. Why not, just in an excess of caution, send this back to the judge? If the judge now wants to give 12 years again, and he's perfectly entitled to, if he wants to give your recommendation of 9, then he's – he might well do so. Why not just send it back to the judge and say, now that you know that Simon – now that Simon is the law, recalculate and do whatever you want to do? I think the answer is that because this Court has held that if the sentencing error is harmless, there's no need to send it back. Right. But if I can't be sure that it's harmless, if I merely think it's likely that it's harmless, I'm trying to think of systemically, what's the harm in sending this back to the district judge? This man's incarcerated. The judge can make a very quick decision. He can impose a new sentence or not. But systemically, why don't we – why are we fighting about this issue? I think the – in this particular case, I'm not sure systemically I can address that, but in this particular case, if the Court had less of a sentencing transcript, if the district court had not gone to such great pains to explain the rationale for his sentence, to very carefully weigh each of the 3553 factors, then perhaps the resentencing would make sense given the change in law. But here you have a very thoughtful, thorough, and rational district court judge working through the factors, having considered all of the evidence presented and arguments by the parties. I also want to point out, I apologize for not being more clear in my supplemental brief, the government didn't intend to concede that the three-level discount for attempts applies. I was simply providing the best case scenario. No, I understood that. But I think it's quite likely that given this, you know, he couldn't – the judge couldn't give the three-level for attempt under 2MB3, right? Correct. But interestingly, if you take the findings that he made and the way that Simon interprets 2X1.1, if that three-level discount isn't applied, you actually end up back at 360 in life. Right. So again, I'm interested in the government's argument. I'm not sure it makes a difference in this case. Do you really think that Koenig survives Simon? I do because it stays within the guidelines approach that Simon requires. So Koenig or Koenig, however you say it, indicates that when you look within the guidelines themselves, if the commentary expressly incorporates or indexes an offense, then 2X doesn't apply. Isn't that exactly the case in Simon? Isn't the offense indexed in Simon also? I don't think so. But I think the problem with the HOPPS Act guideline in Simon was that the Court found that it was an – it had no intra-guideline indexing, whereas – Well, I thought the Court set a nice, bright line in Simon, which is that, you know, guidelines versus statute. And we just do it that way. It wasn't – now you're complicating Simon for me. You're saying Simon requires a second-level. Again, I'm not sure it matters in this case, but I was surprised at the government's position. Well, I don't mean to complicate it, but I think if you take the various specific things Simon directs district courts to look at, the final factor, relevant intra-guidelines context, I think that fits with Koenig. Well, it says – Simon says a guideline other than 2X1 expressly covers an inchoate offense only if the guidelines themselves so indicate. And what you're saying is the guidelines themselves so indicate as long as it's a listed offense somewhere? Well, what it says is Koenig complements that rule by saying within the guideline provision commentary, if it expressly sets forth the statute of conviction, then you don't go to 2X. Right. But that was at a point in time when we were following the now overruled – and I forget the name – Hernandez-Franco. Hernandez-Franco was a reasonable decision. I was on the panel in Simon, and I think I was one of the only people who thought it was reasonable. It's just the panel thought it was not the best, because the plain language of the statute has to be expressly stated in the guidelines. And can you point to any place in the guidelines where it says an attempt under 2339B is accounted for? Can you point to that language in the guidelines? Attempt for this crime is not specifically indicated. Okay. So that's what we held in Simon. If it doesn't say in the guidelines attempt is accounted for in the guidelines, then we look to 2X1.1. And we overruled that exact reasoning in Hernandez. The exact reasoning in Hernandez-Franco was overruled in Simon, and Koenig is equivalent. I think, with all due respect, Koenig is a little bit different than Hernandez because Koenig stays within the guidelines and says within the guidelines if you see commentary. So we're not looking at the statute. Is there any language in the commentary that says attempt for 2339B?  Okay. But it doesn't the word attempt does not appear in connection with 2339B. That's true. That's what we said in Simon. I think you should be getting the flavor that even if it doesn't matter in this case, this is not an argument that it's worth that you ought to be coming back to us with. Understood, Your Honor. What about this idea that the judge maybe improperly anchored his belief that this was up to a life sentence? And had he known? Is it just too speculative to guess? Had he known that? Maybe he would look at 3553A factors a little more robustly. I don't think — I think this sentencing transcript, this particular judge was so thoughtful and so careful that there isn't really a concern. As I read the earlier quote, and as you mentioned, Your Honor, he was very thoughtful in the factors. And whether it was 25 years or 30 to life, he understood 15 was the top, and he decided to go down from 15. This was no doubt a thoughtful judge and a thoughtful transcript. But the judge, at least under my analysis, was proceeding under the wrong guideline. And again, my question is, it was not like we have to send this back for a new trial. We have a thoughtful judge who knows his business, and we tell him it was the wrong guideline. Go back and tell us if you would arrive at the same sentence. Why — this is one of those ones where it sort of strikes me as why are we guessing about whether the — what the judge would do when we ask him? My question is, is there ever room for harmless error? I mean, we've said that, but Judge Hurwitz's questions are, why would we ever have harmless error? Should we ever send something — should we always send it back just automatically? I don't think so. And that would require overruling this Court's precedent that I cited, that harmless error does apply in the sentencing context, and there's judicial efficiency. But I also think, more than that, given the liberty stakes for this defendant, if you had a sentencing transcript and a judge who didn't do all the work this judge did, then it would perhaps make sense. But it doesn't in this case. And even if attempt applies, I think there's a very good chance with the findings already made, it ends up 360 to life under 2X1.1. And I'm prepared to submit unless there are additional questions. Thank you. Thank you. Thank you, Your Honors. I just want to amend or state a different take on something my opposing counsel said. I think he says that Mr. Galloway, the defense attorney, said in sentencing, 15-year — the guideline isn't really available here. Fifteen years is the stat max. That was actually Judge Mendez, the sentencing judge, that said that. So — and that's on page 39 of the sentencing transcript. Yeah. It seems to me that worked to your advantage, your client's advantage. The judge said, boy, if I applied the guidelines, I'd end up with the max. So I'm not going to do that. I'm going to start with the max and depart down. So — Well, he had to start with the stat max, but he believes my client is already getting more than a 50 percent discount under that, because he believes the true guideline is 360 to life. He was very thoughtful. He carefully worked through the guidelines. Hernandez-Franco was good law at that time, but now the law has changed. And I think this judge would want to know, oh, I'm not dealing with a guideline of 360 to life, where he's already getting a 50 percent — more than 50 percent discount. I'm dealing with a lower range, and I want to know that as I'm considering the variance. The courts have said, keep the guidelines in mind throughout the sentencing process. I think Judge Mendez would want to do that. Thank you. Thank you. We appreciate your arguments. The case of United States v. Tozant is submitted.
judges: Ikuta, Hurwitz, McShane